Andrew W. Stavros (8615)
Adam G. Clark (13047)
**STAVROS LAW P.C.**
11693 South 700 East, Ste. 200
Draper, Utah 84020
Phone: 801.758.7604
Fax: 801.893.3573
Email: andy@stavroslaw.com
adam@stavroslaw.com

*Attorneys for Plaintiff Zaynab Leilani*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Zaynab Leilani,<br><br>         Plaintiff,<br><br>v.<br><br>BIOFIRE DIAGNOSTICS, INC.,<br><br>         Defendant. | **COMPLAINT**<br><br>**(JURY DEMAND)**<br><br>Case No.: 2:14-cv-00188-CW<br><br>Judge: Waddoups |

Plaintiff Zaynab Leilani, by and through her counsel, brings this complaint ("Complaint") against BioFire Diagnostics, Inc., and for causes of action allege as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Zaynab Leilani ("Leilani") is a resident of the State of Utah.

2.      At all times relevant to this Complaint, Leilani was employed by BioFire Diagnostics, Inc. ("BioFire"), which is located at 390 Wakara Way, Salt Lake City, Utah 84108.

3. This Court has jurisdiction pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f) ("Title VII"), from claims arising from the actions of BioFire in violation of Title VII.

4. The employment practices alleged to be unlawful were committed in Salt Lake County, Utah, which is within the jurisdiction of the U.S. District Court for the District of Utah, Central Division. Accordingly, venue is proper pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391.

5. At all times relevant to this Complaint, Leilani was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f).

6. At all times relevant to this Complaint, BioFire was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## FACTUAL ALLEGATIONS

7. Leilani is an Iranian who is also a Muslim.

8. On or about May 5, 2008, BioFire hired Leilani to do packaging laboratory.

9. During her time working for BioFire, Leilani was forced to endure frequent inappropriate and derogatory comments regarding her national origin and/or religion from her supervisors and co-workers, and was treated differently by some of her co-workers and supervisors because of her religion and/or national origin.

10. Additionally, Leilani was held to conduct standards that were not applied to employees who were not Muslim and/or not from Iran, and was ultimately terminated because of her religion and/or national origin.

11. During her employment at BioFire, David Asman ("Asman"), the director of the

department where Leilani worked, repeatedly announced to Leilani and her co-workers that all people from Iran are Muslim, and then even claimed that all Muslims are terrorists. Asman knew Leilani was from Iran and that she was a Muslim and he made the comments to harass, humiliate, embarrass and discriminate against Leilani.

12. For example, on one occasion in January, 2012 Leilani informed Asman and Quinn Whitlock ("Whitlock"), the department manager, she was planning to use her paid-time off to go on a vacation. The vacation was approved until her managers learned Leilani was going to visit her family in Kurdistan after the death of a family member. Her managers then told Leilani she needed to meet with BioFire's security officer and attorneys, and should even meet with the Federal Bureau of Investigation before and after her vacation.

13. Asman further told Leilani she needed to take a leave of absence rather than use her paid-time off and that she would not be guaranteed a job when she returned from leave. Asman even suggested that it was mandatory under company policy, even though such a policy had not even been announced to the employees.

14. Additionally, during this January, 2012 conversation Asman asked Leilani why she would even want to go visit her family in Kurdistan because everyone lives with donkeys and camels. He also told Leilani to meet her family in Europe to avoid the difficulties of traveling by camel.

15. In March 2012, as required by Asman, Leilani was forced to meet with BioFire's security officers before she left to Kurdistan.

16. Asman and Quinn did not require employees who were not Muslim and/or not from Iran to take the same extraordinary steps when travelling to foreign countries.

17. In or around May 2012, Asman started making jokes in front of Leilani about how he keeps a lot of guns at home to be prepared in case he lives near "one of those terrorists."

18. Additionally, managers, supervisors and co-workers would treat LeiLani in degrading and belittling ways by scrutinized her accent and constantly watching her anytime she used her work computer. This harassing behavior continued until the date Leilani was terminated.

19. In or around May 2012, and as recent as December 2012, Leilani's managers, supervisors, and co-workers subjected her to demeaning comments and behavior, making statements such as: "Iranians are terrorists," and "Middle Eastern people should die." These managers, supervisors and co-workers even placed open magazine articles about terrorists for Leilani discover in areas she frequented at work.

20. In or around June 2012, Whitlock and Patrick Crawford, Leilani's direct supervisor, demanded Leilani meet them in a conference room where they instructed Leilani to stop complaining to her supervisors about such behavior or she "will not be working [at BioFire] any longer."

21. Leilani made several complaints to her managers, supervisors and human resources during her employment at BioFire. However, BioFire did nothing and the demeaning and degrading conduct towards Leilani by her manager, supervisors and co-workers continued.

22. On or about January 25, 2013, Leilani was mocked and ridiculed in the lunch room by a co-worker who told Leilani she was only working at BioFire to clean up after people. Leilani immediately complained to her supervisor who only responded by saying, "Oh."

23. On January 28, 2013 (the next workday) Leilani went to human resources to file

an official complaint and she was told that BioFire was letting her go and she received her final paycheck.

24.     Leilani's supervisors, managers and human resources department did not take action against the offending co-workers because many of them knew each other from attending church together, and specifically discriminated against her because of her religion and national origin.

**FIRST CAUSE OF ACTION**
**(Religious and National Origin Discrimination under Title VII of the Civil Rights Act)**

25.     Leilani hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

26.     Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination by an employer against an employee on the basis of religion and/or national origin.

27.     Leilani is Muslim and of Iranian origin.

28.     The adverse employment actions taken against Leilani include termination of her employment.

29.     BioFire's actions have directly and proximately caused Leilani substantial past and future economic loss, including lost wages, damage to her career, humiliation, and pain and suffering, in an amount to be determined at trial.

30.     BioFire's unlawful conduct toward Leilani in violation of Title VII was done with reckless disregard for her federally protected rights, such that BioFire should be subjects to an award of punitive damages.

31.     Leilani is also entitled to an award of costs and attorneys' fees, in accordance with Title VII.

## SECOND CAUSE OF ACTION
### (Religious and National Origin Harassment under Title VII of the Civil Rights Act)

32. Leilani hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

33. Title VII prohibits discrimination on the basis of religion and national origin in the enjoyment of all benefits, privileges, terms and conditions of employment.

34. Defendant BioFire knew, or reasonably should have known, through its supervisors and human resource department, that LeiLani's manager, supervisors and co-workers were engaging in and/or fostering the unlawful and offensive behavior alleged above by harassing Leilani because of her religion and/or national origin.

35. Defendant BioFire had a duty to maintain a workplace free from harassment, discrimination and retaliation. Notwithstanding such duty, BioFire failed to take sufficient actions to maintain a workplace free from harassment, discrimination and retaliation.

36. The failure of Defendant BioFire to enforce the law and to protect Leilani constitutes negligence and makes Defendant BioFire liable to Leilani for her damages alleged herein.

37. Defendant BioFire failed to establish, monitor and enforce an effective anti-harassment policy, had no clear and effective mechanism in place to allow Leilani to report sexual harassment, and knowingly or negligently failed to supervise its employees in a manner that would prevent the harassment, intimidation and retaliation experienced by Leilani.

38. Defendant BioFire took tangible and adverse employment action against Leilani by terminating her, and harassing her after she first complaint about discrimination and harassment.

39. The harassment suffered by Leilani was both severe and pervasive.

40. Because Asman and Whitlock were Leilani's supervisor, BioFire is also strictly liable to Leilani pursuant to the doctrine of respondeat superior.

41. Defendant BioFire's actions or inactions have directly and proximately caused Leilani substantial past and future economic loss, including lost wages, damage to her career and professional reputation, and humiliation, pain, suffering and emotional distress, in an amount to be determined at trial.

42. Defendant BioFire's actions were taken with malice and were wanton, reckless and in knowing disregard of Leilani's legal rights and, as such, render it liable for punitive damages.

43. Leilani is also entitled to recover all attorneys' fees and costs expended in prosecuting this action.

## THIRD CAUSE OF ACTION
### (Retaliation under Title VII of the Civil Rights Act)

44. Leilani hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

45. Title VII prohibits retaliation against any employee for engaging in opposition to unlawful discrimination and harassment.

46. Leilani engaged in protected activity by opposing the treatment she received from Asman, Whitlock, other supervisors, and employees – which she reasonably believed constituted unlawful discrimination and harassment – including by rejecting offensive comments about her national origin and/or religion, complaining about discrimination to BioFire's human resources department, and engaging in other protected activity, among other things.

47. The actions of BioFire in terminating Leilani in response to her opposing and reporting discrimination and harassment constitute retaliation prohibited by Title VII.

48. BioFire's actions have directly and proximately caused Leilani substantial past and future economic loss, including lost wages, damage to her career and professional reputation, and humiliation and pain and suffering, in an amount to be determined at trial.

49. BioFire's actions were taken with malice and were wanton, reckless and in knowing disregard of Leilani's legal rights and, as such, render BioFire liable for punitive damages.

50. Leilani is entitled to recover all attorneys' fees and costs expended in prosecuting this action.

## REQUEST FOR JURY TRIAL

Leilani requests a trial by jury on all causes of action set forth herein pursuant to Fed.R.Civ.P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Leilani prays for judgment and relief against BioFire as follows:

1. For judgment in Leilani's favor for discrimination, harassment and retaliation on the basis of religion and national origin in violation of Title VII;

2. For an award of back pay in an amount sufficient to make Leilani whole;

3. For an award of front pay, in lieu of reinstatement, in an amount sufficient to make Leilani whole;

4.       For an award of compensatory damages in an amount to be determined by proof at trial, including non-pecuniary damages for emotional distress, pain and suffering and humiliation, and loss of reputation and other damages;

5.       For an award of reasonable attorney's fees and costs incurred in bringing this lawsuit;

6.       For an award of pre-judgment and post-judgment interest as allowed by law; and

7.       For an award of punitive damages; and

8.       For such other and further relief as the Court deems just and equitable.

DATED this 12th day of March, 2014.

/s/ **Andrew W. Stavros**
Andrew W. Stavros
Adam G. Clark
*Attorneys for Plaintiff Zaynab Leilani*